UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIAM JORDAN                              CIVIL ACTION

V.                                          NO. 14-377

ARIES MARINE CORPORATION ET AL.             SECTION "F"

ORDER AND REASONS

Before the Court is William Jordan and Aries Marine Corporation's joint motion for summary judgment against Fab-Con, Inc. and Signal Mutual Indemnity Association, Ltd. For the following reasons, the motion is DENIED.

**Background**

This contract dispute arises from a marine personal injury lawsuit. The question before the Court is whether the alleged tortfeasor must reimburse the injured rigger's employer and insurer for the benefits and medical expenses they have paid on the rigger's behalf.

William Jordan was employed as a rigger by Fab-Con, Inc. Fab-Con contracted with Energy XXI under a Master Service Agreement to provide offshore construction. Fab-Con sent Jordan as a member of a construction crew to work at Energy's platform located off of the coast of Louisiana. Jordan was injured in the course of his employment on the offshore platform. Fab-Con's insurer, Signal Mutual Indemnity Association, Ltd., has compensated Jordan for his injuries and has paid medical expenses on his behalf.

Aries Marine also contracted with Energy. Aries chartered a self-elevating lift boat to Energy under a Blanket Charter Agreement. A crane was mounted onto Aries' boat and used to lift an exhaust stack over the offshore platform. Jordan and his crew were tasked with removing a valve that was attached to the suspended exhaust stack. During this maneuver, the exhaust stack collapsed and injured Jordan. Aries employees were allegedly operating the boat and crane at the time of the incident.

Jordan sued Aries, among others, contending that Aries' negligent operation of the crane caused his injuries. Aries denies liability. Fab-Con and Signal intervened in the lawsuit seeking reimbursement from Aries for the amounts they paid for Jordan's compensation benefits and medical expenses. In this motion, Jordan and Aries jointly seek to dismiss Fab-Con and Signal's claims for reimbursement from Aries.

This is a matter of contract interpretation. In the Master Service Agreement (MSA) betwee Fab-Con and Energy, there is as provision that states:

> [Fab-Con] agrees to procure, maintain and amend, at its sole expense, and require all of [Fab-Con's] subcontractors of every tier to procure, maintain and amend at their sole expense, policies of insurance in the amounts outlined on Exhibit "A", attached hereto . . . which coverage shall fully address the liabilities assumed hereunder.

Exhibit A, which is attached to the Master Service Agreement, provides minimum insurance coverages, limits, and amounts that

Fab-Con must maintain under the Agreement. At the end of Exhibit A, a final paragraph provides:

> In addition to the above:
>
> . . .
>
> 2. All insurance policies shall contain the provision that the insurance companies endorse their policies to provide a waiver of subrogation in favor of ENERGY XXI Services, LLC, its parent, subsidiaries, joint ventures, agents, servants, invitees, employees, officers, directors, co-lessees and affiliated companies.

Relying on this provision in Exhibit A, Jordan and Aries contend that Fab-Con was required to waive its right of subrogation against Aries because Aries was Energy's "invitee." Critical to this dispute is whether the above provision in Exhibit A is actually a part of the MSA between Fab-Con and Energy. The Court finds that the answer is no.[1]

## I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

---

[1] Jordan and Aries presume that the language in Exhibit A is a part of the MSA. Thus, they focus their motion primarily on arguing that Aries was Energy's "invitee." Because the Court finds that the relevant language in Exhibit A is not a part of the MSA, it does not address whether Aries qualifies as an "invitee" under the legal definition.

fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light

4

most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.

II.

Louisiana law governs the Master Service Agreement. The Outer Continental Shelf Land Act provides:

> "the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . ."

43 U.S.C. § 1333(a)(2)(A). A contractual dispute "arises on an OSCLA situs if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A). <u>See</u> <u>Grand Isle Shipyard, Inc. v. Seacor Marine, LLC</u>, 589 F.3d 778 (5th Cir. 2009). Here, the majority of the work under the MSA was to be performed on a stationary platform on the outer Continental Shelf off of the coast of Louisiana. Thus, the Louisiana rules for contract interpretation control.

Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.

"The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

### III.

The outcome of this dispute depends upon whether the final paragraph in Exhibit A, which requires Fab-Con to waive its subrogation rights against Energy's "invitees," is a part of the Master Service Agreement. Thus, the Court turns to the language in the MSA that references Exhibit A.

The MSA provides: "[Fab-Con] agrees to procure, maintain and amend . . . policies of insurance in the *amounts outlined* on Exhibit "A", attached hereto . . . ." (emphasis added). Exhibit A is a two-page document that lists different kinds of insurance policies and the minimum amounts of coverage required for each. Following the list of insurance amounts, there is a final paragraph that lists additional insurance requirements, including waiver of subrogation in favor of Energy's invitees. There are no signatures on Exhibit A.[2] More importantly, nowhere does the MSA incorporate Exhibit A into the agreement. Rather, the plain language of the MSA indicates that the only provisions of Exhibit A that are

---

[2] To the contrary, Exhibits "B" and "C" both have signature lines. The Court notes, however, that neither are signed.

6

relevant to the parties' agreement are the *amounts outlined*. Binding Fab-Con to the fine print provisions at the end of Exhibit A, none of which outline amounts of insurance coverage, would be to diverge from the clear and explicit language of the MSA.

Further evidence that the waiver provisions in Exhibit A are not a part of the Agreement is that the MSA already covers waiver of subrogation rights. In the same paragraph that references Exhibit A, the MSA provides, "Said policies shall further . . . waive the underwriters' rights of subrogation in favor of ENERGY XXI, its co-lessees or joint venturers." There is no mention of waiver in favor of "invitees" in the MSA's provisions. To conclude that an extraneous provision of a referenced exhibit trumps the explicit provisions of the MSA is untenable.

The final evidence of the parties' intent to be bound by the waiver provision in the MSA instead of the waiver provision in Exhibit A is the language from the checklist forms that Energy required Fab-Con to execute. The MSA provides:

> [Fab-Con] shall furnish to ENERGY XXI, on forms supplied by ENERGY XXI, certificates of insurance evidencing the fact that proper insurance has been secured and no work shall be commenced unless the certificates have been furnished to and are on file with ENERGY XXI.

The form presented by Energy did not require Fab-Con to waive subrogation against invitees. Instead, the form asks, "Do all policies contain waiver of subrogation in favor [of] Energy XXI Services, LLC, its parent, subsidiaries, and affiliates?" This

language is consistent with the waiver requirements in the MSA. Moreover, Energy was satisfied with the insurance policies that Fab-Con secured, and it permitted Fab-Con to commence work ostensibly under the impression that Fab-Con had only waived subrogation in favor of Energy, its parent, subsidiaries, and affiliates.

Jordan and Aries have failed to prove that the provision in Exhibit A requiring waiver of subrogation in favor of Energy's invitees was intended to be incorporated into the Agreement. The plain language of the MSA indicates the opposite.

Accordingly, Jordan and Aries' motion for summary judgment against Fab-Con and Signal is DENIED.

New Orleans, Louisiana, January 27, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE